IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW ROBERT YOUNG,

Plaintiff,

v.

MARK NOOTH, et al.,

Defendants.

3:10-cv-00479-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

Plaintiff Matthew Robert Young, appearing *pro se*, alleges claims under 42 U.S.C. §§ 1983, 1985, 1986 for violations of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution. Young alleges that defendants committed numerous civil rights violations, including opening his legal and personal mail and placing him in disciplinary segregation to gain a tactical advantage in litigation (Claim I), forging letters from the Federal Bureau of Investigation and a civil attorney to prevent him from filing a civil action (Claim II),

Page 1 - FINDINGS AND RECOMMENDATION

forging letters from his mother (Claim III), and refusing to send his legal mail to Intel Corporation and Steve Jobs of Apple Computers (Claim IV). This court has jurisdiction pursuant to 28 U.S.C. § 1331. Now before the court is defendants' unenumerated Rule 12(b) motion to dismiss many of plaintiff's claims for failure to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e)(a). (#34.) Also before the court is defendants' motion for summary judgment on the remaining claims. (#30.) For the reasons set forth below, defendants' motions should both be granted.

## LEGAL STANDARDS

### I.  Unenumerated Motion to Dismiss

The Prison Litigation Reform Act requires that a prisoner exhaust "available" administrative remedies before bringing an action. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). "[I]ndividuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of" the Act. *Page v. Torrey*, 201 F.3d 1136, 1139-40 (9th Cir. 2000). The Act requires exhaustion for all suits about prison life, "whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). As a result, a prisoner must exhaust administrative remedies before bringing a claim under 42 U.S.C. § 1983. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061-62 (9th Cir. 2007).

Exhaustion is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921 (2007). Thus, defendants bear the burden of raising and proving the absence of exhaustion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Courts in the Ninth Circuit treat

Page 2 - FINDINGS AND RECOMMENDATION

exhaustion as a matter of abatement in an unenumerated Rule 12(b) motion to dismiss. *Id.* at 1119. The court may look beyond the pleadings and decide disputed issues of fact to determine whether a prisoner has properly exhausted his administrative remedies. *Id.* at 1119-20. If the court concludes that the prisoner has not exhausted the prison's administrative process, the court should dismiss the case without prejudice. *Id.* at 1120.

II.     **Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). When considering a motion for summary judgment, the district court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 249; *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Only after the moving party has made such a showing does the burden shift to the opposing party to show that a genuine issue of fact remains. *See* Fed. R. Civ. P. 56(e). To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate

Page 3 - FINDINGS AND RECOMMENDATION

showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23; *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The opposing party may not rest on conclusory allegations or mere assertions, *see Taylor*, 880 F.2d at 1045; *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, *see Liberty Lobby*, 477 U.S. at 249-50; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Taylor*, 880 F.2d at 1045.

## BACKGROUND

### I.  Plaintiff's Allegations

#### First Claim

Young's first claim alleges two types of misconduct. First, Young alleges that defendants opened his incoming and outgoing legal and personal mail outside of his presence in order to gain a tactical advantage over him in litigation.[1] (Compl., #1, at 5, ¶1.) Second, Young alleges that in the first half of 2006 defendants strategically placed him into disciplinary segregation for rule violations he did not commit, thereby denying him access to legal materials and preventing him from communicating with the court. *Id.* at 5, ¶¶2,3.

#### Second Claim

Young's second claim alleges that defendants opened letters to him from a lawyer and the

---

[1] Young reiterates this general allegation with more supporting details in his second, third, and fourth claims. (Compl., #1, at 6-7, 8-9, 10.)

Page 4 - FINDINGS AND RECOMMENDATION

Federal Bureau of Investigation (FBI), replaced their contents with forgeries, then resealed the envelopes and delivered them to him. (Compl., #1, at 6-8.) Young allegedly received a letter from a legal assistant to attorney Michelle Burrows in 2008 informing him that Ms. Burrows would not represent him. Young insists that since the type of paper used and signature were inconsistent with previous letters he had received from Ms. Burrows' firm, the letter was forged. *Id.* at 6, Exs. 2-3. Young allegedly notified the FBI about this instance of mail tampering. He received a written response from the FBI urging him to address his complaints of mail fraud through the appropriate channels in his correctional facility. *Id.* at 7. Young also alleges that defendants opened this letter from the FBI outside of his presence and replaced it with a forgery. *Id.* at 6-7, Ex. 5.

### Third Claim

Young's third claim asserts that defendants opened two letters from his mother outside of his presence and replaced them with forgeries that omitted important details from the originals. *Id.* at 8. The two letters, written in February and March 2010, concerned a settlement in another civil case. *Id.* Young alleges that defendants forged the letters in order to violate his constitutional rights, steal his "Intellectual Property Patentable Inventions" and deceive him about deadlines to respond to a letter from the Department of Administrative Services. *Id.* at 9. Finally, Young alleges that defendants delayed delivering a letter from the Department of Administrative Services and eventually delivered it to him without the envelope it came in. *Id.* at 9, Exs. 8,9.

### Fourth Claim

Young's fourth claim asserts that defendants improperly opened his outgoing legal mail

Page 5 - FINDINGS AND RECOMMENDATION

directed to Intel Corporation and Steve Jobs of Apple Computers, both of whom are defendants in another civil action brought by Young. *Id.* at 10. Young also alleges that defendants prevented him from serving those entities with copies of a petition for writ of certiorari. *Id.* Finally, Young contends that defendants improperly opened numerous pieces of incoming legal mail from the Ninth Circuit Court of Appeals and the United States District Court, each of which were identified with the notation "official business." *Id.* at 11; Exs. 12-20.

## II. Oregon Department of Corrections Grievance System

Oregon Administrative Rules 291-109-100 through 291-109-0190 describe the inmate grievance system employed by the Oregon Department of Corrections (ODOC).[2] (Hicks Decl., #36, ¶5, Att. 2.) The ODOC instructs inmates to try to resolve issues through face-to-face discussion with staff, followed by a written communication. *Id.* at ¶6. If communication with line staff does not resolve an inmate's issue, the inmate may then file a grievance form. Or. Admin. R. 291-109-0140(1), -0150(2). Inmates may only file grievances pertaining to the following matters: (a) the misapplication of any administrative directive or operational procedure; (b) the lack of an administrative directive or operational procedure; (c) any unprofessional behavior or action which may be directed toward an inmate by an employee or volunteer; (d) any oversight or error affecting an inmate; (e) a program failure that is not the direct result of a misconduct report where the inmate was found in violation; and (f) the loss or destruction of property. Or. Admin. R. 291-109-0140(2). The grievance coordinator logs the grievance, sends a receipt to the inmate and forwards the grievance to the appropriate staff person

---

[2] I refer throughout to the version of the rules in effect at the time relevant to Young's complaint. The rules were later amended on March 1, 2011.

Page 6 - FINDINGS AND RECOMMENDATION

for a response. Or. Admin. R. 291-109-0160(1).

At the first appeal level, if an inmate is not satisfied with the initial response to his or her grievance, the inmate may file an appeal with the grievance coordinator within 14 days from the time the response was sent to the inmate. Or. Admin. R. 291-109-0170(1). The appeal must include the original grievance, attachments and the response. *Id.* The grievance coordinator forwards the appeal to the functional unit manager with authority to resolve the issue. *Id.* An inmate cannot appeal a grievance that the grievance coordinator returned for procedural reasons. Or. Admin. R. 291-109-0160(5). The inmate may, however, resubmit the grievance after correcting the procedural error. *Id.*

At the second appeal level, an inmate may appeal the functional unit manager's decision by filing another appeal with the grievance coordinator within 14 days of the date that the first appeal response was sent to the inmate. Or. Admin. R. 291-109-0170(2). The appeal must include the original grievance, attachments, responses and documentation related to the first appeal. *Id.* The grievance coordinator forwards the appeal to the assistant director for review. *Id.* The assistant director's decision on the grievance appeal is final and not subject to further review. *Id.*

### III. Plaintiff's Grievances

Young's complaint attaches several informal written communications with ODOC personnel pertaining to their handling of his mail, but includes no grievances. (Compl., #1, Exs. 22, 23, 25.) However, records provided by the ODOC indicate Young filed numerous grievances between April 2009 and April 2010. (Hick Decl., #36, ¶¶11-52; Atts. 4-12.) None of the grievances pertain to ODOC staff forging incoming letters or placing Young in disciplinary

Page 7 - FINDINGS AND RECOMMENDATION

segregation. Several of those grievances, however, relate to facts alleged in Young's complaint regarding defendants' handling of Young's legal mail. I briefly describe each relevant grievance below.

On March 23, 2009, Young submitted grievance 2009.04.015 stating that Correctional Officer Burch was opening and reviewing his legal and personal mail in the control center of the disciplinary segregation unit before delivering it to Young. (Hicks Decl., #36, Att. 4 at 1.) Officer Burch responded to Young's grievance, explaining that inspection of mail within special housing required her to remove staples or tape from envelopes before delivering the mail to inmates. *Id.*, Att. 4 at 2. Young did not appeal Officer Burch's response. *Id.*, ¶13.

On January 4, 2010, Young submitted grievance 2010.01.00055A asserting that a returned undeliverable letter addressed to "General Counsel Member[,] Oregon State Bar" and marked "LEGAL MAIL" had been opened outside of his presence. (Hicks Decl., #36, Att. 9 at 1-2.) Bill Doman, Transitional Services Manager, responded to Young's grievance explaining that since the letter was not addressed to any specific attorney, it did not meet the definition of legal mail in Oregon Administrative Rule 291-131-0010(14), which applies to mail "to or from an attorney, court, or court official . . . ." *Id.*, Att. 9 at 3. Accordingly, when the letter was returned to sender by the United States Postal Service, ODOC opened and examined it as ordinary mail. *Id.* Young appealed the grievance to Mark Nooth, superintendent of Snake River Correctional Institution, contending that Doman's interpretation of the administrative rule was flawed. *Id.* at 4. Nooth responded, finding that Young's mail was processed according to the administrative rules. *Id.* at 5. Young did not appeal Nooth's response. *Id.* at ¶35.

On January 12, 2010, Young submitted grievance number 2010.01.00106AA alleging

Page 8 - FINDINGS AND RECOMMENDATION

that the mail room continued to open his legal mail outside his presence and delayed delivering a particular piece of legal mail until after deadlines to respond to the letter had expired. (Hicks Decl., #36, Att. 10 at 1.) Bill Doman responded, explaining that the letter in question, from the Department of Administrative Services, was not legal mail because no specific attorney was noted on the envelope, and therefore, was processed as ordinary mail. *Id.*, Att. 10 at 2. Young appealed to Nooth, superintendent of the facility, who rejected Young's appeal. *Id.*, Att. 10 at 3,4. Young then appealed to the assistant director of ODOC. *Id.*, Att. 10 at 5. Assistant Director Michael Gower responded to Young's appeal, explaining that the letter was not legal mail and that the Snake River Correctional Institution processes incoming mail within 48 hours of receiving it. *Id.*, Att. 10 at 6. Grievance Coordinator Teresa Hicks declared that Young exhausted all administrative remedies available to him on this particular issue. *Id.*, ¶42.

Finally, on April 4, 2010, Young submitted grievance number 2010.04.00027AA stating that the mail room refused to send his legal mail addressed to Intel Corporation and Steve Jobs at Apple Computer, Inc., instead returning them to Young opened. (Hicks Decl., #36, Att. 12 at 1.) Sandra Fetter responded to Young's grievance, explaining that since Intel Corporation and Steve Jobs at Apple Computer were not attorneys, courts, or court officials, the letters were not legal mail. *Id.*, Att. 12 at 2. Fetter stated that the CD28 forms (used to provide funds for additional postage) offered by Young could not be attached, since they could only be used for legal mail. Consequently, Young's letters were deemed overweight and were returned. *Id.* Young appealed Fetter's response, contending that since Intel and Steve Jobs were defendants in a pending litigation, his letters were legal mail. *Id.*, Att. 12 at 5. Mark Nooth responded, explaining that a separate procedure exists for mailing letters to defendants in a legal case, involving obtaining

Page 9 - FINDINGS AND RECOMMENDATION

verification from the library coordinator that the items to be sent qualify as legal mail. *Id.*, Att. 12 at 6. Young appealed again, and Assistant Director Michael Gower responded. *Id.*, Att. 12 at 7-8. Accordingly, Grievance Coordinator Teresa Hicks stated that Young exhausted all administrative remedies available to him on this particular issue. *Id.*, ¶52.

## DISCUSSION

### I.  Unenumerated Motion to Dismiss

Under the Prison Litigation Reform Act, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Moreover, inmates must exhaust all grievance remedies prior to filing a Section 1983 action, including appealing the grievance decision to the highest level within the grievance system. *Bennet v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). Prisoners must navigate the prison's administrative-review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible," even where the prisoner seeks relief not available in grievance proceedings. *Booth v. Churner*, 532 U.S. 731, 739-41 (2001). Thus, the obligation to exhaust available remedies persists "as long as *some* action can be ordered in response to the complaint." *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005).

Defendants admit that Young exhausted his administrative remedies regarding two issues alleged in his complaint: improper opening and untimely delivery of a letter from the Department of Administrative Services (part of Claim III) and improper opening and failure to send letters to

Page 10 - FINDINGS AND RECOMMENDATION

Intel Corporation and Steve Jobs (Claim IV).[3] Defendants contend, however, that Young failed to exhaust all of the other issues raised in his complaint. I agree.

Young submitted no grievances related to the defendants' allegedly improper decisions to place him into disciplinary segregation (part of Claim I) nor the defendants' alleged opening and forging of letters from an attorney, the FBI, or his mother (Claims II and III). Accordingly, Young failed to exhaust his remedies on those issues as required by the PLRA.

The remainder of Young's allegations concern various instances of ODOC improperly opening legal mail outside of Young's presence. Young pursued some administrative remedies related to various mail handling concerns. Nevertheless, Young does not allege claims based on the issues he grieved and, moreover, Young failed to pursue all available administrative remedies on those issues. For example, Young filed a grievance stating that Officer Burch improperly opened his mail while he was in disciplinary segregation. To the extent Young even raised that issue in his current complaint, he failed to exhaust available remedies because he never appealed Officer Burch's response. Similarly, although Young grieved the improper opening of his legal mail to the Oregon State Bar and appealed defendants' initial response, he did not pursue a second level appeal.

In sum, defendants have met their burden to demonstrate that Young failed to exhaust administrative remedies concerning all claims other than his allegations that ODOC employees improperly handled his incoming letter from the Department of Administrative Services and his outgoing letters to Intel Corporation and Steve Jobs of Apple Computers. I turn now to these

---

[3] Consequently, I address these issues below in the context of defendants' motion for summary judgment.

Page 11 - FINDINGS AND RECOMMENDATION

allegations.

## II. Motion for Summary Judgment

Summary judgment is appropriate on the two claims for which Young exhausted administrative remedies for a number of reasons. As an initial matter, I note that Young fails to point to specific probative evidence demonstrating the existence of a genuine issue for trial. A party opposing summary judgment must either "cit[e] to particular parts of materials in the record," or show that the materials cited by the adverse party do not establish the absence of a genuine dispute, in order to demonstrate that a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(c). Since Young filed no opposition to defendants' motion, he does neither.

Even considering *sua sponte* the handful of documents Young attaches as exhibits to his complaint, there is insufficient evidence to create a genuine issue of material fact on either of his two surviving claims. The claims that Young exhausted involve three different scenarios: opening of incoming mail and outgoing mail, delay in sending outgoing mail, and failure to send outgoing mail. Although Young generally alleges violations of the First, Fourth, Fifth, and Ninth Amendments, I construe his complaint as articulating claims under his First Amendment rights to access the courts and to send and receive mail.

### A. Right to Access the Courts

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817,(1977). This right requires prison authorities to provide prisoners with "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356; *Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999). The right of access also includes the ability to assert civil rights

Page 12 - FINDINGS AND RECOMMENDATION

actions under 42 U.S.C. § 1983. *Lewis*, 518 U.S. at 354-355; *Madrid*, 190 F.3d at 995. A prisoner, however, has "no constitutional right of access to the courts to litigate an unrelated civil claim." *Simmons v. Sacramento Cnty. Superior Court*, 318 F.3d 1156, 1160 (9th Cir. 2003). Additionally, the right of access only extends to bringing complaints to the court; it does not include a right to discover such claims or to litigate them effectively once they are filed. *Lewis*, 518 U.S. at 354-55. A prisoner asserting a violation of the right of access to the courts must also establish that he has suffered an actual injury. *Lewis*, 518 U.S. at 349; *Madrid*, 190 F.3d at 996. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348.

Here, Young presents insufficient evidence to create a genuine dispute over whether defendants violated his right of access to the courts. The first possible access to the courts claim relates to ODOC's alleged delay in delivering Young a letter from the Department of Administrative Services. The letter requests Young complete an attached form within 14 days of the date of the letter, December 11, 2009, and notes that failure to respond will impact the agency's ability to consider Young's claim. (Compl., #1, at Ex. 9.) Young presents evidence that the letter was postmarked on December 30, 2009 and that the prison records office wrote a note to him on January 11, 2010 requesting he return the form enclosed with the letter. (Compl., #1, at Ex. 10.) Thus, it appears that Young actually received the letter well after response deadline stated within it. Young alleges that this letter relates to a civil action, *Young v. Nooth et al.*, 08-01138-PK (D. Or.). (Compl., #1, at 8.) Indeed, I take judicial notice that the case Young mentions is an civil rights action under Section 1983 alleging various constitutional violations

Page 13 - FINDINGS AND RECOMMENDATION

within the prison. That case is still pending before this court.[4] Although Young alleges that defendants' delay in delivering the letter until January 11, 2010 caused him to miss "important filing dates," Young presents no evidence that he suffered any actual injury from the delayed delivery of the letter, as is required to maintain an access to the courts claim. Rather, this court granted Young's motions for extensions of time on several occasions in the underlying case. (3:08-cv-01138-PK, #75, #84.)

Young's second possible right of access to the courts claim concerns ODOC's alleged failure to deliver Young's letters to Intel and Steve Jobs at Apple Computers, which contained copies of a petition for writ of certiorari to the United State Supreme Court in *Young v. Intel Corp. and Steve Jobs,* 08-1496-BR (D. Or.). There is no dispute over the details of this incident. Bill Doman, the Transitional Services Manager of the prison, states the prison's mail processing center received two envelopes from Young in March 2010, one addressed to Intel Corporation and the other to Steve Jobs at Apple Computer. (Doman Decl., #32, ¶15.) The envelopes each had prepaid postage for one ounce, but both weighed more than an ounce. *Id.* Young attached a CD28 form to the envelopes, a form used by a prisoner to allow money to be drawn from the prisoner's trust account to cover the cost of additional postage. *Id.* CD28 forms can only be used in conjunction with outgoing legal mail. *Id.* A prison law library coordinator must confirm that the envelope contains legal mail and then authorize the use of the CD28. *Id.* Young did not follow this procedure and Young's letters did not otherwise meet the definition for legal mail,

---

[4] Young twice moved to disqualify me from that case, contending that my unfavorable rulings demonstrated my bias against him and that I lacked jurisdictional authority over the action. (3:08-cv-01138-PK, #33, #78.) Both these motions were denied. (3:08-cv-01138-PK, #40, #79.) Young subsequently filed a complaint of judicial misconduct against me and other members of this bench, which Chief Judge Kozinski ultimately dismissed.

Page 14 - FINDINGS AND RECOMMENDATION

since they were not addressed to an attorney, court, or court official. *Id.* Consequently, mail processing staff opened and inspected Young's letters according to the rules for non-legal mail. *Id.* They returned both letters to Young, explaining that the CD28 could not be used and, therefore, that Young's letters lacked sufficient postage. *Id.* at ¶16. This account is generally consistent with Young's grievances concerning the incident, although Young explains that he could not go to the law library to obtain approval for the use of the CD28 because he was in disciplinary segregation at the time. (Hicks Decl., #36, Att. 12 at 5.)

I take judicial notice that Young's complaint in *Young v. Intel Corp. and Steve Jobs,* 08-1496-BR (D. Or.) alleged, among other claims, civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986. (3:08-cv-01496-BR, #2, #5.) Judge Brown dismissed Young's complaint *sua sponte*, specifically noting that Young failed to allege state action to support his Section 1983 claim and failed to allege racial or class-based animus to support his Section 1985 and 1986 claims. (3:08-cv-01496-BR, #5.) When Young's amended complaint failed to cure those deficiencies, among others, Judge Brown dismissed the complaint with prejudice and entered judgment. (3:08-cv-01496-BR, #20, #21.) Young appealed the judgment to the Ninth Circuit, but the Court summarily affirmed by order, noting that "the questions raised in this appeal are so insubstantial as not to require further argument." (3:08-cv-01496-BR, #24.) On May 26, 2010, Young filed a petition for writ of certiorari before the United States Supreme Court, which was distributed to conference and was subsequently denied. *Young v. Intel Corp., et al.,* No. 09M109, *available at*
http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/09m109.htm.

Since Young's underlying complaint in *Young v. Intel Corp., et al.* asserted civil rights

Page 15 - FINDINGS AND RECOMMENDATION

claims, defendants' alleged interference with Young's service of his petition for writ of certiorari to the Supreme Court could technically give rise to a claim for denial of access to the courts. Nevertheless, Young's right to access the courts claim necessarily fails because other requirements for that claim are not satisfied. The Supreme Court has held that a prisoner seeking redress for violation of the right to access the courts must show that his underlying claim was "nonfrivolous" and "arguable." *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Here, Young's underlying civil rights claims were entirely frivolous, having been dismissed on screening by the district court and by summary order of the Ninth Circuit. Additionally, Young presents no evidence that he suffered an actual injury from defendants' failure to deliver his mail serving Intel and Steve Jobs with a copy of his petition. *See Lewis*, 518 U.S. at 349. In fact, the Supreme Court apparently considered his petition notwithstanding his alleged difficulty serving defendants with a copy of that petition through the mail. Thus, there are no material factual issues existing for trial on this claim.

### B.    Right to Send and Receive Mail

Prisoners also have a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995). A prison, however, may adopt regulations that impinge on a prisoner's First Amendment rights as long as they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legal mail is subject to heightened First Amendment protections. *See O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996). Specifically, the government may not impose regulations permitting opening and inspecting legal mail outside the presence of a prisoner that injure the prisoner or place the prisoner in immediate danger of sustaining a direct injury, because to do so would have an

Page 16 - FINDINGS AND RECOMMENDATION

impermissible chilling effect on the constitutionally protected right to petition the government. *Id.* at 325 (citing *Laird v. Tatum*, 408 U.S. 1, 13 (1972)). Oregon regulations define legal mail as "incoming or outgoing mail to or from an attorney, court, or court official, which is clearly worded 'legal mail.' " Or. Admin. R. 291-131-0010(13). Courts define legal mail somewhat more narrowly, including mail sent from an attorney to a prisoner, *see Wolff v. McDonnell*, 418 U.S. 539 (1974), and mail sent from a prisoner to the courts, *see Royse v. Superior Court*, 779 F.2d 573, 574-75 (9th Cir. 1986), but not mail sent from the courts to a prisoner. *See Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998).

In his exhausted claims, Young alleges that defendants impermissibly opened "legal mail" outside of his presence, including outgoing letters to Intel and Steve Jobs and an incoming letter from the Department of Administrative Services. Although defendants agree they opened the letters in question outside of Young's presence, this conduct could not possibly violate Young's First Amendment right to send and receive mail. Neither Oregon regulations nor federal case law include these types of letters within the definition of "legal mail;" none was addressed to or from an attorney, court, or court official. Moreover, even if the letters were legal mail– which they are not– Young presents no evidence that defendants' opening of those letters injured him or placed him in danger of injury. *O'Keefe*, 82 F.3d at 325. Thus, Young fails to create a triable issue concerning his right to send and receive mail.

### C.    Qualified Immunity

Even assuming that Young presented sufficient evidence to create a factual dispute over whether defendants violated his First Amendment rights, summary judgment would still be appropriate because defendants would be entitled to qualified immunity. "The doctrine of

Page 17 - FINDINGS AND RECOMMENDATION

qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity is an affirmative defense; if the plaintiff proves that the right allegedly violated was clearly established, the burden shifts to the defendant official to prove that his or her conduct was reasonable even though it might have violated the law." *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995) (internal citation omitted). "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Here, the undisputed declaration of ODOC manager Bill Doman shows that mail processing staff followed applicable Oregon regulations concerning inmate mail. Further, those rules are consistent with the constitutional requirements of the First Amendment. *See Porter v. Hill*, No. 07-605-CL, 2009 WL 1220576, at *3 (D. Or. Apr. 30, 2009). Accordingly, defendants present sufficient evidence to prove that their conduct was reasonable and, therefore, would be entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, defendants' unenumerated motion to dismiss (#34) should be granted and all claims except those resulting from defendants' handling of plaintiff's incoming letter from the Department of Administrative Services and outgoing letters to Intel Corporation and Steve Jobs at Apple Computers should be dismissed without prejudice for failure to exhaust administrative remedies. Defendants' motion for summary judgment (#30) on plaintiff's

Page 18 - FINDINGS AND RECOMMENDATION

remaining claims should be granted. Judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

IT IS SO ORDERED.

Dated this 30th day of June, 2011.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge